IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | * | |
| DENNIS E. WEBB and | * | CHAPTER 7 |
| MARJORIE M. WEBB, | * | |
|     Debtors | * | |
| | * | CASE NO. 1:13-bk-03036-MDF |
| THOMAS E. WEBB, | * | |
| KAREN M. FILLMORE and | * | |
| LAURA C. TAPP, | * | |
|     Plaintiffs | * | |
| | * | |
| v. | * | ADV. NO. 1:13-ap-00214-MDF |
| | * | |
| DENNIS E. WEBB, | * | |
|     Defendant | * | |

## OPINION

### I. Procedural History

On June 7, 2013, Dennis E. Webb and Marjorie M. Webb, husband and wife (collectively, "Debtors"), filed a joint petition under Chapter 7. Thereafter, Thomas E. Webb, Karen M. Fillmore, and Laura C. Tapp, (collectively, "Plaintiffs") filed a Complaint against Dennis E. Webb ("Defendant") alleging that unsecured debt owed jointly to the three Plaintiffs should be determined to be non-dischargeable. Defendant filed a Motion to Dismiss the Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), which was denied by the Court on October 30, 2013.

On September 25, 2014, Plaintiffs filed a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56. The parties have filed their respective statements of undisputed material facts along with briefs on Plaintiffs' request for summary judgment. The matter is ready for decision. For the reasons set forth below, the motion will be denied.

## II. Factual Background

Plaintiffs and Sharri A. Kandarczyk ("Kandarczyk"), who is not a party to this proceeding, are the adult children of the Defendant and are creditors of Debtors' bankruptcy estate. In the schedules filed in the case, Plaintiffs and Kandarczyk each are listed as holding an unsecured claim in the amount of $14,250.00. The claims of Defendant's children arise from a dispute among the parties over the disposition of certain life insurance proceeds, which was the subject of a lawsuit filed in the Court of Common Pleas of York County, Pennsylvania (the "York County Court") prior to Debtors' bankruptcy filing. After Debtors filed their petition, Kandarczyk assigned her claim against the estate to the Plaintiffs in equal shares.

Rebecca A. Webb ("Decedent") is also a child of Defendant. She died on May 9, 2011, intestate, unmarried, and without children. At the time of her passing, she was the owner of a life insurance policy issued by The Standard Insurance Company ("Standard") provided through her employment with Baltimore County, Maryland. Two days after her death, Baltimore County sent Defendant a form to claim the proceeds of the policy and instructed that once the form was returned, it would be forwarded to Standard for processing. On May 24, 2011, Defendant executed a Disclaimer and Renunciation (the "Disclaimer") disclaiming his interest in "any property passing through the estate or to [him] by virtue of the Decedent's death without condition or reservation of any kind." In the Disclaimer, Defendant stated that he had not "in any way acted to accept any interest or assets in the above estate or otherwise."

The record does not reflect when Defendant submitted the death claim form to Baltimore County or when the form was forwarded to Standard, but Standard marked the claim form as "received" on June 16, 2011. On June 28, 2011, Standard sent Defendant a letter advising him

that the Decedent's mother was the only named beneficiary and that the company understood that Decedent's mother had predeceased her. The letter further stated that according to the terms of the policy, if no named beneficiary survived the Decedent, the proceeds would be paid in the order specified in the policy. Because the Decedent died without a spouse or children, the next beneficiary was Decedent's father, followed by Decedent's brothers and sisters. The letter also advised Defendant that an "Order of Beneficiary Affidavit" should be completed by "the surviving beneficiary or beneficiaries who rank highest in the order" listed in the letter. Defendant executed the affidavit and submitted it to Standard. In the affidavit, Defendant stated that he was the surviving beneficiary of the highest rank and there were no other beneficiaries of equal or higher rank. On July 8, 2011, Standard sent Defendant a letter enclosing a check made payable to him in the amount of $57,000.00, which represented fifty percent of the life insurance proceeds.

After learning of the existence of the life insurance policy, Plaintiffs' counsel wrote to Standard on August 1, 2011 enclosing a copy of the Disclaimer and requesting that Standard issue payment to Decedent's surviving siblings. On August 5, 2011, Standard sent a letter to Defendant regarding his Disclaimer and stated that "[i]f you agree that the disclaimer applies to this Life Insurance claim, you should either immediately return the $57,009.28 to The Standard," or arrange to transfer the funds to Decedent's siblings. Defendant was further informed that if he disagreed with Standard's interpretation of the Disclaimer, he should provide a legal defense of his position. Shortly thereafter, Defendant filed a Petition to Nullify the Disclaimer in state court, which was dismissed on December 13, 2012. In dismissing Defendant's petition, the York County Court held that the Disclaimer was valid and applied to the Decedent's life insurance

3

policy. Accordingly, the state court held that Defendant had no legal interest in Decedent's estate or in the insurance proceeds. In conformance with this ruling, Standard paid over the remaining proceeds of the policy ($57,000) to Plaintiffs. Defendant has not returned the insurance proceeds he received on July 8, 2011 to Plaintiffs.

## III. Discussion[1]

### A. Motion to for summary judgment under Fed. R. Civ. P. 56

A motion for summary judgment seeks resolution of a controversy based on the pleadings alone. A court is required to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). When requesting summary judgment, the movant bears the initial burden of identifying the pleadings, discovery materials, together with any affidavits, which it asserts establish the absence of a genuine issue of material fact. *EL v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 237 (2007) (citing *Celotex v. Catrett,* 477 U.S. 317, 323 (1986)). After the movant meets this initial burden, the non-movant must then "make a showing sufficient to establish the existence of each element of his case on which he will bear the burden of proof at trial." *Huang v. BP Amoco Corp.*, 271 F.3d 560, 564 (2001). All reasonable inferences must be granted to the non-movant at this stage. *Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 255 (1986)). However, the issue of fact raised by the non-movant must be "genuine," that is, it "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Therefore, the non-moving

---

[1] This court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I).

4

party is tasked with demonstrating to the court that there is a "genuine issue for trial." *Id.* at 587. When the record is considered as a whole, if "a rational trier of fact" could not find for the nonmoving party, there is no "genuine issue for trial." *Id.*

### *B. Exceptions to discharge under Section 532(a)(6)*

Plaintiffs assert that their claim against Defendant should be excepted from discharge under § 523(a)(6) of the Bankruptcy Code. Section 523(b)(6) states that "a discharge under section 727 [. . .] of this title does not discharge an individual debtor from any debt [. . .] for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Plaintiffs premise their claim of willful and malicious injury on the tort of conversion. "Claims of conversion have been held to constitute willful and malicious injury for purposes of § 523(a)(6)." *Am. Asset Fin., LLC v. Feldman (In re Feldman)*, 506 B.R. 222, 233 (Bankr. E.D. Pa. 2014)(citing *Panda Herbal Int'l, Inc. v. Luby (In re Luby),* 438 B.R. 817, 837 (Bankr. E.D. Pa. 2010) [2]); *Nakonetschny v. Rezykowski (In re Rezykowski),* 493 B.R. 713, 723 (Bankr. E.D. Pa. 2013).

Under Pennsylvania law, conversion occurs when "a defendant deprives a plaintiff of his right to a chattel or interferes with the plaintiff's use or possession of a chattel without the

---

[2] The facts of the *Feldman* case are similar to those now before me. In *Feldman*, the debtor/attorney assigned his right to certain future fees to the plaintiff/factor. When the debtor received fees subject to the factoring agreement, he retained funds that should have been paid to the factor. The factor sued the attorney for conversion in New Jersey state court and obtained a judgment. The bankruptcy court, applying collateral estoppel, held that the elements of conversion under New Jersey law were sufficiently similar to the elements of a case under § 523(a)(6) and granted summary judgment to the plaintiff. Here, unlike in *Feldman*, the underlying state court action is not a tort action filed by a creditor, but a petition to revoke the Disclaimer on which Defendant had the burden of proof. No findings were made by the York County Court regarding the elements of a case under § 523(a)(6), such as whether Debtor's actions were willful and malicious.

5

plaintiff's consent and without lawful justification," provided that the plaintiff had actual or constructive possession or an immediate right to possession of the chattel at the time of the alleged conversion. *Chrysler Credit Corp. v. Smith*, 643 A.2d 1098, 1100 (Pa. Super. 1994) (citing *Stevenson v. Econ. Bank of Ambridge*, 197 A.2d 721, 726 (Pa. 1964)); *Eisenhauer v. Clock Towers Assoc.*, 582 A.2d 33, 36 (Pa. Super. 1990)); *see also In re Feldman*, 506 B.R. at 233 (citing *McKeeman v. Corestates Bank, N.A.*, 751 A.2d 655, 659 n. 3 (Pa. Super. 2000)).

Not all conversions, however, are excepted from discharge under § 523(a)(6). If a debtor converts the property of another willfully and maliciously, the claim against the debtor for the injury suffered by the victim may be excepted from discharge. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332 (1934); *see also GMAC, Inc. v. Coley (In re Coley)*, 433 B.R. 476, 500 (Bankr. E.D. Pa. 2010). Consideration must be given to the circumstances of the conversion because the act may be characterized as reckless or as an innocent "unauthorized assumption of dominion without willfulness or malice." *Davis*, 293 U.S. at 332 (citations omitted). Under these circumstances, a claim would not be excepted from discharge.

The element of "willfulness" under § 523(a)(6) requires proof of "a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998) (emphasis in the original). The Third Circuit has explained that "actions are willful and malicious within the meaning of §523(a)(6) if they either have a purpose of producing injury or have a substantial certainty of producing injury." *Conte v. Gautam (In re Conte)*, 33 F.3d 303, 307 (3d Cir. 1994). Maliciousness does not require a showing of "personal hatred, spite or ill-will." *In re Jacobs*, 381 B.R. 128, 136 (Bankr. E.D. Pa. 2008). Rather, an

6

injury is "malicious" if it was caused by a wrongful act and done without just cause or excuse. *In re Coley*, 433 B.R. at 498.

Turning to the record before me on summary judgment, the issue in this case is whether the pleadings, affidavits, and uncontested facts establish that Defendant voluntarily committed an act that he knew to be wrong and substantially certain to produce injury to Plaintiffs and their respective rights to the insurance proceeds. Plaintiffs rely on the findings of the state court regarding Defendant's understanding of the legal effects of the Disclaimer to establish that Defendant's actions were willful. In the Disclaimer, Defendant averred the following:

> I, Dennis Eugene Webb, father of the decedent and an intestate beneficiary of the above estate, absolutely disclaim and renounce any right, title and/or interest that I may have in any property passing through the estate or to me by virtue of the decedent's death without condition or reservation of any kind pursuant to 20 Pa. C.S.A. Section 6201 et seq., as amended.

After taking evidence on Debtor's request to nullify the Disclaimer, Judge Blackwell determined that the insurance proceeds were property of the Decedent's estate, and, thus, disposition of the proceeds was subject to the Disclaimer. Having concluded that Defendant effectively disclaimed his interest, Judge Blackwell dismissed Defendant's assertion that the insurance company informed him that life insurance proceeds were not assets of the estate stating that "[Defendant] knew what he was signing when he executed the Disclaimer."[3]

---

[3] Judge Blackwell relied on *In re Estate of Sauers*, 613 Pa. 186, 32 A.3d 1241 (2011) for the proposition that the proceeds of a life insurance policy are estate assets. *Estate of Rebecca A. Webb*, No. 67-11-1098, slip op. at 3 (York Ct. Com. Pl. December 13, 2012). *Sauers* holds that insurance policies are a decedent's property at the time of death and that an administrator of a decedent's estate is responsible for taking possession of a life insurance policy and for ensuring that the proceeds are distributed under the terms of the policy. In this Court's view, however, the Pennsylvania Supreme Court did not state that life insurance benefits are estate assets. *Id.*, 613 Pa. at 199, 32 A.3d at 1249. Even Plaintiffs did not assert that the insurance proceeds were estate assets, but argued that the language "property passing . . . to me by virtue of the decedent's death" included life insurance proceeds. Nevertheless, this Court may not second guess the

The issue in this case is distinguishable from the issues decided by the York County Court. In the state court proceeding, Defendant had the burden to prove that he accepted the insurance proceeds before he executed the Disclaimer.[4] The York County Court found that he was unable to meet this burden and, therefore, Defendant failed to prove that the insurance proceeds were not subject to the Disclaimer.

In an action to except a debt from discharge, however, it is the party opposing the discharge who has the burden to prove that a willful and malicious injury was inflicted by a debtor. To find that a willful and malicious injury occurred, I must find that Defendant knew that his retention of the insurance proceeds was wrongful and that he retained the proceeds intending to injure Plaintiffs or with the substantial certainty that injury would occur. To make this finding, Plaintiffs must prove that Defendant knew that he was not entitled to the insurance proceeds when he received them. Reviewing the facts in the light most favorable to Defendant, this burden has not been met.

---

decision of the York County Court on this issue. Issue preclusion or collateral estoppel principles foreclose litigation in Debtors' bankruptcy case on the issue of whether the Disclaimer applied to the life insurance proceeds. Judge Blackwell's ruling that the insurance proceeds were estate assets and subject to the Disclaimer is binding on this Court.

[4] A party may disclaim an interest in property any time before acceptance and acceptance may be express or implied. 20 Pa. C.S.A. § 6206(a). Acceptance may be demonstrated by taking possession of the property, executing a written waiver of the right to disclaim, transferring or assigning the property, making a representation that the property will be accepted to a person who relies on the representation to his detriment, or selling the interest under a judicial sale. *Id.*

## IV. Conclusion

For these reasons, Plaintiffs' motion for summary judgment will be denied and the matter will be scheduled for trial. An appropriate order will be entered.

**By the Court,**

*Mary D. France*
Chief Bankruptcy Judge

Date: November 17, 2014

9