IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | |
| DENNIS E. WEBB and | CHAPTER 7 |
| MARJORIE M. WEBB, | |
|     Debtors | |
| | CASE NO. 1:13-bk-03036-MDF |
| THOMAS E. WEBB, | |
| KAREN M. FILLMORE and | |
| LAURA C. TAPP, | |
|     Plaintiffs | |
| | |
| v. | ADV. NO. 1:13-ap-00214-MDF |
| | |
| DENNIS E. WEBB, | |
|     Defendant | |

## OPINION

### I. Procedural History

On August 29, 2013, Thomas E. Webb, Karen M. Fillmore, and Laura C. Tapp ("Plaintiffs") filed the instant adversary case alleging that their claims against Dennis E. Webb ("Defendant") should be excepted from discharge under 11 U.S.C. § 523(a)(6). Plaintiffs and Sharri A. Kandarczyk ("Kandarczyk"), who is not a party to this proceeding, are the adult children of Defendant. In the schedules filed in the case, Plaintiffs and Kandarczyk each are listed as holding an unsecured claim in the amount of $14,250.00.[1] The claims of Defendant's children arise from a dispute among the parties over the disposition of proceeds of an insurance policy on the life of Rebecca Webb ("Rebecca"), Plaintiffs' sister and Defendant's daughter. The dispute was the subject of a lawsuit filed in the Court of Common Pleas of York County, Pennsylvania (the "York County Court") prior to the bankruptcy petition. After Defendant and

---

[1]The Chapter 7 trustee filed a "report of no distribution" stating that no assets were available for administration to pay claims. Accordingly, creditors were not noticed to file proofs of claim in the case.

his wife ("Debtors") filed their petition, Kandarczyk assigned her claim against Defendant to the Plaintiffs in equal shares.

On September 25, 2014, Plaintiffs filed a Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56 (the "Motion"). In the Opinion filed on November 17, 2017 in support of the Order denying the Motion, I determined that although Plaintiffs were able to establish that Defendant converted certain life insurance proceeds, they failed to meet their burden to establish that Defendant knew that his retention of the insurance proceeds was wrongful and that he retained the proceeds intending to injure Plaintiffs or with the substantial certainty that injury would occur.

In the pretrial statement submitted by the parties, they stipulate that the issues remaining before the Court are whether Defendant's conversion of the insurance proceeds was willful and malicious and whether Defendant knew that he was interfering with the right of his children to receive the life insurance proceeds when he submitted a claim to The Standard Insurance Company ("Standard").

Trial was held on December 17, 2014. For the reasons set forth below, I find that Plaintiffs' request that the debts owed to them be determined to be excepted from discharge must be denied.

## II. Factual Background

For the sake of brevity, the findings of fact and conclusions of law set forth in my Opinion on the summary judgment motion set forth at Docket # 34 are incorporated by reference. It is necessary, however, to repeat the salient facts that support my decision in this matter.

2

In its December 13, 2012 decision, the York County Court determined that Defendant disclaimed his rights to the proceeds of Rebecca's life insurance policy when he executed a "Disclaimer and Renunciation" (the "Disclaimer") on May 24, 2011. In the Disclaimer, Defendant stated that as "father of decedent and an intestate beneficiary of the estate[,]" he disclaimed and renounced "any right, title and/or interest" that he may have had in "any property passing through the estate or to [him] by virtue of the Decedent's death without condition or reservation of any kind pursuant to 20 Pa. C.S.A. Section 6201 et seq., as amended." He further asserted that he had not "in any way acted to accept any interest in the above estate or otherwise." (Ex. P-4). The York County Court found that while Rebecca's employer, Baltimore County, sent Defendant an insurance claim form on May 11, 2011, Defendant was unable to prove that he returned the claim form before he signed the Disclaimer on May 24, 2011. If Defendant had returned the completed form before executing the Disclaimer, the Court held, it may have constituted acceptance of the insurance proceeds.[2] The York County Court concluded that while the insurance company may have provided Defendant with some inaccurate information regarding whether the life insurance proceeds were part of the estate, "[Defendant] knew what he was signing when he executed the Disclaimer and Renunciation." (Ex. P5).

Defendant is estranged from his children. Plaintiff Thomas Webb ("Thomas") testified that neither he nor any of his other siblings had spoken with their father for twenty years at the time of Rebecca's death. Thomas testified that he was the first family member to be notified of his sister's death and that he "took care of her" during her life. After her death, Thomas was

---

[2] Under Pennsylvania probate law, acceptance of an asset before execution of a disclaimer invalidates the disclaimer as to the asset. Acceptance may be express or inferred from actions of the person entitled to receive an interest in the property. 20 Pa. C.S.A. §6206.

named as the administrator of his sister's estate. Although Baltimore County notified Thomas of Rebecca's death, the County's insurance division would not discuss her insurance with him when he contacted the office in June 2011.

Defendant learned of his daughter's death through a phone call from Thomas on May 9, 2011. On May 11, 2011, Thomas contacted Defendant to discuss Rebecca's burial arrangements and memorial service. On the same day, Baltimore County sent Defendant a life insurance death benefits claim form. Defendant was aware that Rebecca's mother, his former wife, was the named beneficiary on the policy. He also knew that because his former wife had predeceased Rebecca, under the terms of the policy he was next in line to receive the proceeds. He also was aware that if he did not receive the proceeds they would be distributed equally to Rebecca's four surviving siblings. Defendant testified that when he was contacted by Baltimore County he was told that the insurance policy was not part of Rebecca's estate.

Although the record is not precisely clear as to when Defendant received the insurance claim form, it was at or about the time Rebecca's memorial service was held, which Defendant did not attend. The day after the service Defendant and Thomas met so that Defendant could sign a waiver that would authorize the funeral home to have Rebecca's body cremated. Several days thereafter, Defendant and Thomas again met to discuss the administration of Rebecca's estate at which time Thomas presented Defendant with a copy of the Disclaimer and asked him to consider signing it. At neither meeting did Defendant disclose the existence of the insurance policy, that he had been in contact with Baltimore County and Standard, or that he intended to claim the proceeds. Several days later Defendant agreed to sign the Disclaimer, and the parties scheduled a meeting at a bank on May 24, 2011 to obtain his signature before a notary.

4

At the hearing in this matter, Defendant testified that Thomas "slipped in" the Disclaimer when the waiver regarding the disposition of Rebecca's body was signed. He further implied that he did not have an opportunity to review the document. Defendant's testimony was not credible on this point. Defendant signed the Disclaimer ten days after he signed the burial waiver. Thomas' testimony that he gave his father several days to think about whether he wanted to sign the Disclaimer was supported by other evidence at the hearing. Defendant signed the Disclaimer on May 24, 2011 without discussing with anyone whether it might affect his right to receive the life insurance proceeds.

After he signed the Disclaimer, Defendant asked Thomas for a copy of the death certificate for Defendant's former wife. Defendant did not say why he wanted the death certificate and Thomas, who was not in possession of a copy to provide to Defendant, did not ask for an explanation.

Standard required Defendant to complete several documents before it would remit the proceeds. Baltimore County completed a claim form and sent it to Standard on June 6, 2011. Although a beneficiary statement signed by Defendant was attached to the claim form, it was not dated. After receiving the claim form, Standard requested Defendant to sign an "Order of Beneficiary Affidavit" stating that he was next in line under the terms of the insurance policy to receive the proceeds. On July 5, 2011, Defendant executed a beneficiary affidavit before a notary and submitted it to Standard. On July 8, 2011, the insurance company sent Defendant a check for half of the proceeds of the policy.

After learning independently of the existence of the life insurance policy, Plaintiffs' counsel, in correspondence dated August 1, 2011, requested Standard to pay the proceeds to

5

Rebecca's surviving siblings and enclosed a copy of the Disclaimer. Standard responded by notifying Defendant of the competing claims to the funds and by directing that the proceeds either should be returned or legal justification provided to Standard as to why Defendant was entitled to retain the funds. Defendant did not respond to Standard or surrender the funds to Plaintiffs. He instead filed a petition with the York County Court seeking a determination that the Disclaimer did not apply to the life insurance proceeds. After the York County Court ruled against him, he refused to turnover the proceeds to his children.

### III. Discussion[3]

    A.    *Preclusive effect of the York County Court's December 13, 2012 Opinion and Order*

Issue preclusion, otherwise known as collateral estoppel, "prevents relitigation of an issue in a later action, despite the fact that it is based on a cause of action different from the one previously litigated." *Balent v. City of Wilkes-Barre*, 542 Pa. 555, 669 A.2d 309, 313 (1995). When a federal court considers whether it is appropriate to invoke collateral estoppel principles, the court must look to state law to determine the extent to which a state court would find that a judgment would have a preclusive effect in a later action. *Schwartz v. Prudential Ins. Co. of Am. (In re Kridlow)*, 233 B.R. 334, 342 (Bankr. E.D. Pa. 1999). Under Pennsylvania law, a court will apply collateral estoppel principles if:

> (1) the issue decided in the prior case is identical to one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding and (5) the determination in the prior proceeding was essential to the judgment.

---

[3] This court has jurisdiction pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

*Weissberger v. Myers*, 90 A.3d 730, 733 (Pa. Super. 2014) (quoting *Catroppa v. Carlton*, 998 A.2d 643, 646 (Pa. Super. 2010)).

In the petition before the York County Court, Defendant had the burden to prove that the Disclaimer he executed did not apply to the insurance proceeds and that he did not legally "accept" the proceeds before he signed the Disclaimer. The York County Court determined that Defendant did not meet this burden. Specifically, the York County Court held that Defendant disclaimed his interest in the proceeds of Rebecca's life insurance, that the insurance proceeds were assets of Rebecca's estate, that Defendant did not take sufficient steps to accept the insurance proceeds before he disclaimed his interest, and that Defendant knew what he was signing when he executed the Disclaimer. Defendant did not appeal this decision.

Pennsylvania courts have adopted the Restatement (Second) of Judgments, Section 28, which sets forth several exceptions to the applicability of the collateral estoppel doctrine. The doctrine is not applied against a party who had a heavier burden of persuasion on an issue in the first action than the same party had in the subsequent action or when the burden had shifted to the party's adversary. *Restatement (Second) of Judgments* § 28(4) (1982), *cited in Weissberger*, 90 A.3d at 734. In the York County case, Defendant had the burden to prove that the Disclaimer did not apply to the insurance proceeds. Here, Plaintiffs, not Defendant, had the burden to prove the elements of a cause of action under 11 U.S.C. § 523(a)(6) by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291 (1991). And like all exceptions to discharge under § 523, subsection (a)(6) is construed strictly against creditors and liberally in favor of debtors. *Nakonetschny v. Rezykowski (In re Rezykowski),* 493 B.R. 713, 721-22 (Bankr. E.D. Pa. 2013).

Therefore, while the York County Court's decision is conclusive on the issue of whether Defendant effectively disclaimed his interest in the insurance proceeds, it is not conclusive on the issue of whether Defendant inflicted a willful and malicious injury on Plaintiffs that should be excepted from discharge in his bankruptcy case. For similar reasons, the York County Court's finding that Defendant "knew what he was signing" when he executed the Disclaimer does not equate to a finding that his actions in accepting the insurance proceeds after he signed the Disclaimer were willful and malicious.

B.  *Conversion as a willful and malicious injury under § 523(a)(6)*

"[A] discharge under section 727 . . . does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). If a debtor converts property of another, the debt will not be subject to discharge if the debtor's actions are willful and malicious. *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332 (1934); *see also GMAC, Inc. v. Coley (In re Coley)*, 433 B.R. 476, 500 (Bankr. E.D. Pa. 2010); *Am. Asset Fin., LLC v. Feldman (In re Feldman)*, 506 B.R. 222, 233 (Bankr. E.D. Pa. 2014) (citing *Panda Herbal Int'l, Inc. v. Luby (In re Luby),* 438 B.R. 817, 837 (Bankr. E.D. Pa. 2013)).

"Willfulness" and "maliciousness" are distinct concepts. *CB Research & Dev. Inc. v. Kates (In re Kates)*, 485 B.R. 86, 100 (Bankr. E.D. Pa. 2012) (citing cases). Actions are "willful" within the meaning of § 523(a)(6) if they either are intended to injure another party or have a substantial certainty of producing injury. *Coley*, 433 B.R. at 497 (citing *Conte v. Gautam (In re Conte)*, 33 F.3d 303, 307 (3d Cir. 1994)). The scienter requirement of § 523(a)(6), therefore, does not except from discharge debts that arise from an injury that is recklessly or negligently

8

inflicted. *Kawaauhau v. Geiger*, 523 U.S. 57, 64 (1998). Actions are "malicious" if they are wrongful and done without just cause or excuse, but specific malice, involving "personal hatred, spite, or ill-will" need not be present. *Coley*, 433 B.R. 498.

Although conversion is an intentional tort, not all conversions may be characterized as willful and malicious under § 523(a)(6). *AgChoice Farm Credit, ACA v. Glenn (In re Glenn)*, 470 B.R. 731, 736 (Bankr. M.D. Pa. 2012) (citations omitted). In determining whether an act of conversion is willful and malicious, consideration must be given to the circumstances of the conversion. For example, a conversion may be characterized as a reckless act, or as an innocent "unauthorized assumption of dominion without willfulness or malice." *Davis*, 293 U.S. at 332 (citations omitted).

      C.    *Was Defendant's conversion of the life insurance proceeds willful and malicious under § 523(a)(6)?*

The York County Court determined that Defendant disclaimed his interest in the proceeds of Rebecca's life insurance policy. There is no dispute, however, that had he not signed the Disclaimer, Defendant would have been entitled to receive the proceeds because the named beneficiary had predeceased Rebecca and he was next in line under the terms of the policy. Plaintiffs were entitled to receive the proceeds of the policy only if Defendant renounced his interest in their favor and did not accept the proceeds before he executed the Disclaimer.

To determine whether a debtor's actions are willful and malicious, a court must examine a debtor's state of mind at the time he took the action that produced the injury. In this Circuit, most courts employ the subjective standard to determine the intent of the debtor. *Se. Pa. Synod, Evangelical Lutheran Church in Am. v. Gotwald (In re Gotwald)*, 488 B.R. 854, 866 (Bankr. E.D. Pa. 2013); *Jou v. Adalian (In re Adalian)*, 481 B.R. 290, 292 (Bankr. M.D. Pa. 2012); *Fuji*

9

*Photo Film Col, Ltd., v. Benun (In re Benun)*, 386 B.R. 59, 77 (Bankr. D.N.J. 2008) (stating in dicta that if compelled, the court would apply the subjective standard); *Contra, Sinyakov v. Pavlovskiy (In re Pavlovskiy)*, No. 05-24125, Ad. No. 05-2176, 2007 WL 2048965, at *1 (Bankr. D.N.J. July 11, 2007) (applying the objective standard); *But cf.,Wrobel v. Conner (In re Conner)*, 302 B.R. 509, 514 (Bankr. W.D. Pa. 2003) (describing the "subjective" and "objective" approaches and holding that facts of the case supported a finding of a willful and malicious injury under either approach). Under the subjective approach, at a minimum, a debtor must have "actual knowledge" that harm to the creditor is substantially certain to occur. *In re Conte,* 33 F.3d at 307-09; *Thiara v. Spycher Bros. L.P. (In re Thiara)*, 285 B.R. 420, 432 (B.A.P. 9th Cir. 2002*)*; *BankUnited, N.A. v. Lehmann (In re Lehmann)*, 511 B.R. 729, 737 (Bankr. M.D. Pa. 2014) (citations omitted). This does not require a court to accept a debtor's statement as to his intent. Circumstantial evidence may be considered to help establish what the debtor must have actually known or was thinking at the time he acted. *Carillo v. Su* (*In re Su*), 290 F.3d 1140, 1146 (9th Cir. 2002).

### 1. Were Defendant's actions "willful"?

Plaintiffs assert that Defendant's actions were "willful" under the statute because he knew that he previously had surrendered his rights in the insurance proceeds before he received them. At trial Defendant continued to assert that he was entitled to the insurance proceeds because he did not believe that the Disclaimer covered insurance proceeds. He testified that he thought the Disclaimer only affected his rights to assets passing through Decedent's estate, and he believed that insurance proceeds passed outside the estate. Summarizing his position, Debtor stated that the Disclaimer "didn't say nothing [sic] about including the life insurance policy and it still don't

10

[sic]." He insisted that Rebecca's employer contacted him first and told him about the insurance. He also insisted that Baltimore County and/or Standard told him that the insurance proceeds were not part of her estate.

The only testimony at trial was provided by Defendant and Thomas. Thomas was a more credible witness, but he could not testify as to Defendant's understanding of the Disclaimer, and he did not know about the insurance policy when he urged his father to consider signing the Disclaimer. While no evidence was presented that Defendant was coerced into disclaiming his interest in Rebecca's estate, neither Thomas nor counsel for the estate made an effort to explain to Defendant the extent of the Disclaimer's provisions. Plaintiffs relied heavily on the York County Court's statement that Defendant understood the consequences of the Disclaimer. The York County Court, however, focused appropriately on whether Defendant had met his burden to show that he did not disclaim his rights to the insurance proceeds, not on whether his actions were willful and malicious.

In addition to his testimony, Defendant's interactions with Baltimore County and Standard, as revealed through correspondence submitted in evidence, support Defendant's steadfast assertion that he intended to claim the proceeds. As soon as Debtor was notified that he was the probable beneficiary of his daughter's life insurance policy he took steps to claim the benefits. He intentionally kept this information from his children, but his interactions with Baltimore County and Standard demonstrated no ambivalence.[4]

---

[4] On cross examination, Defendant denied that he had "concealed" from Plaintiffs that he was applying for Decedent's insurance proceeds. In that testimony, he distinguished a "concealment" from an intentional decision not to reveal. He further testified that he did not reveal it to them because he did not think it was "important." I find this testimony to be wholly disingenuous. It strains credulity to believe that Defendant genuinely thought that a life insurance policy worth $114,000 was not "important."

11

In retrospect, if Defendant had disclosed that he was claiming the insurance proceeds before he executed the Disclaimer, there would have been little Plaintiffs could have done to prevent him from receiving the proceeds. Because Plaintiffs and Defendant were estranged, Defendant hoped to secure the benefits of the insurance policy without disclosing its existence. If he had been forthright about his efforts to obtain the insurance proceeds, it is likely his children would have protested that he did not deserve the funds. Rather than asserting his rights openly, he hid the existence of the asset while assuring his children that he would be taking nothing from his daughter's estate. The York County Court determined that it was wrongful for him to continue to pursue the insurance proceeds after he had disclaimed them. But at the time he signed the Disclaimer, the wrongful action he knowingly took was the deceit he practiced on his children, not the action he took to claim the insurance proceeds. Based on Defendant's testimony and the exhibits admitted in evidence, I conclude that Defendant failed to understand the breadth of the Disclaimer, the use of the term "property" to include the proceeds of life insurance, and the reference to the Probate Code with sufficient clarity to find that his actions were "willful."

It was Plaintiffs' burden to prove that when Defendant claimed the insurance proceeds, at a minimum, he knew that harm to the Plaintiffs was substantially certain to occur. *See Roodhof v. Roodof (In re Roodhof)*, 491 B.R. 679, 685 (Bankr. M.D. Pa. 2013) (citing *In re Conte*, 33 F.3d at 307-09) (other citations omitted). When conversion of property is the act which produces the injury, it typically occurs when a debtor converts the collateral of a secured creditor. In this context, willful conversion may be established by proving that the debtor knew of the creditor's rights in the property and that the debtor's conduct would produce injury to the creditor. *In re Thiara*, 285 B.R. at 432-33 (citing *Mitsubishi Motors Credit of Am., Inc. v. Longley (In re*

*Longley)*, 235 BR. 651, 657 (B.A.P. 10th Cir. 1999); *see also In re Glenn,* 470 B.R. at 736. Applying a similar analysis to the within case, Plaintiffs failed to prove that Defendant understood that his children were the rightful owners of the insurance proceeds and that by claiming the funds he would injure their interests. Accordingly, I find that Plaintiffs failed to prove that Defendant's conversion of the insurance proceeds was willful.

### 2. Were Defendant's actions malicious?

In the absence of proof that Defendant's actions were willful, Plaintiffs are unable to sustain their burden to prove that the debt is excepted from discharge. But Plaintiffs also have failed to prove that Defendant's action were malicious. Malice "[i]nvolves (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *Petralia v. Jercich (In re Jercich),* 238 F.3d 1202, 1209 (9th Cir. 2001) (internal citations omitted), *cited in Wells Fargo Equip. Fin., Inc. v. Alario*, No.10-37591(MBK), 2011 WL 3510865, at *6 (Bankr. D.N.J. Aug. 9, 2011). Malice may be implied from an act of conversion based upon the nature of the wrongful act, but it first must be established that the conversion was willful. *Id.* (citing *In re Thiara*, 285 B.R. at 434).

Defendant does not dispute that his actions were intentional. The York County Court's holding that the Disclaimer was effective as to the insurance proceeds makes Defendant's actions, in retrospect, "wrongful." Defendant effectively injured Plaintiffs by claiming the proceeds. But while Defendant's actions were wrongful, the injury inflicted by Defendant was not "willful" as defined by the Third Circuit. *See In re Conte*, 33 F.3d at 307-09.

I also find that Plaintiffs did not rebut Defendant's contention that his conversion of the funds should be excused because he believed they were outside the scope of the Disclaimer. In its

13

opinion, the York County Court observed that "[t]hough [Defendant] may have received some inaccurate advice from Standard . . . regarding whether life insurance proceeds were part of the estate that does not change the Court's opinion that [Defendant] knew what he was signing when he executed the Disclaimer . . . ." In the absence of other evidence that Defendant understood that by executing the Disclaimer he was surrendering his interest in Rebecca's life insurance policy, I find the York County Court's observation concerning the extent of Defendant's "knowledge" too slender a thread to support a finding that Defendant's actions in claiming the insurance proceeds were malicious.[5]

---

[5]My decision in this matter does not address whether or not Defendant "deserved" the proceeds in a colloquial sense. "A judge does not have 'free-floating discretion to redistribute rights in accordance with his [or her] personal views of justice and fairness, however enlightened those views may be.'" *U.S. v. Pepperman,* 976 F.2d 123, 131 (3d. Cir. 1992) (quoting *Matter of Chicago, Milwaukee, St. Paul & Pac. R.R. Co.*, 791 F.2d 524, 528 (7th Cir. 1986)). All too frequently insurance policy owners fail to amend their beneficiary designations when the primary beneficiary dies. When the policy is not updated and the insured dies, the terms of the policy may provide for distribution in undesired ways. Unfortunately, this is one of those cases.

14

## IV. Conclusion

Plaintiffs failed to meet their burden to prove that Defendant's actions were willful and malicious when he claimed the proceeds of Rebecca's life insurance policy after he executed a Disclaimer that by reference included the proceeds. Accordingly, the Court finds that the debts owed by Defendant to Plaintiffs are subject to the discharge under 11 U.S.C. § 727 that will be entered in this case. Judgment will be entered in favor of Defendant and against Plaintiffs.

**By the Court,**

_Mary D. France_
Chief Bankruptcy Judge

Date:  February 6, 2015